# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Harris v. Thompson*, 2012 IL 112525

---

| | |
|---|---|
| Caption in Supreme Court: | JAMES HARRIS, Appellee, v. STEVEN W. THOMPSON *et al.*, Appellants. |
| | |
| Docket No. | 112525 |
| | |
| Filed | June 21, 2012 |
| Rehearing denied | September 24, 2012 |
| | |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Vehicle Code provisions on how drivers of private and public emergency vehicles must refrain from negligence do not abrogate the protection from negligence claims provided by the Tort Immunity Act to drivers of public emergency vehicles and their employers—damage verdict overturned and prospective-only application refused |
| | |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Massac County, the Hon. James R. Williamson, Judge, presiding. |
| | |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed in part and reversed in part. |

| Counsel on Appeal | Charles G. Roth, of Kavanagh, Scully, Sudow, White & Frederick, PC, of Peoria, for appellants. |
| | |
| | Mark S. Johnson, John R. Schneider and Matthew B. Ferrell, of Johnson & Schneider, L.L.C., of Cape Girardeau, Missouri, for appellee. |
| | |
| | Ashley Niebur, Brian Day and Roger Huebner, of Springfield, for *amicus curiae* Illinois Municipal League. |

| Justices | JUSTICE FREEMAN delivered the judgment of the court, with opinion. |
| | Justices Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion. |
| | Chief Justice Kilbride dissented, with opinion. |

## OPINION

¶ 1 Plaintiff, James Harris, brought a personal injury action in the circuit court of Massac County against defendants, Steven W. Thompson and Massac County Hospital District. The circuit court entered judgment on a jury verdict in favor of plaintiff, and the appellate court affirmed. No. 5-09-0625 (unpublished order under Supreme Court Rule 23). We allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). We now reverse the judgment of the appellate court.

¶ 2                                      I. BACKGROUND

¶ 3 Defendant Massac County Hospital District employed defendant Steven W. Thompson as an ambulance driver. Between 6:15 and 6:30 p.m. on January 26, 2004, Massac Memorial Hospital received a diabetic emergency call from Southgate Nursing Home to pick up and transport a nursing home resident to another hospital for further care. Thompson was instructed that this was an emergency. Julie Worthen, a hospital emergency medical technician (EMT), accompanied Thompson in the rear of the ambulance to set up supplies for the patient. The nursing home was located east of the intersection of Ninth Street and Butler Road in Metropolis. Thompson was driving east on Ninth Street toward Butler Road.

¶ 4 At that time, plaintiff, James Harris, was driving his 2001 Dodge Caravan south on Butler Road toward Ninth Street. Plaintiff's wife, Vashi, and daughter Chelsea were passengers. They were traveling between 20 and 25 miles per hour. The two vehicles collided in the intersection. Plaintiff never saw the ambulance prior to the impact because he was looking to his left upon entering the intersection, which was away from the direction the eastbound ambulance was traveling. Worthen did not witness anything prior to the collision

because the back of the ambulance lacked windows.

¶ 5        The front of plaintiff's vehicle hit the center of the left side of the ambulance. The impact knocked the ambulance over onto its right side. The Harrises, Thompson, and Worthen all sustained injuries.

¶ 6        On January 24, 2005, plaintiff, Vashi, and Chelsea brought a personal injury action against defendants. The Harrises alleged that: Massac County Hospital District was a municipal corporation and Thompson was its employee; Thompson was negligent; therefore, he was liable and the hospital district was vicariously liable based on the theory of *respondeat superior*. The Harrises separately alleged negligence against defendants, and plaintiff and Vashi each additionally alleged loss of consortium. Their first amended complaint added a jury trial demand for each count.

¶ 7        On June 27, 2006, defendants filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2002)) asserting an affirmative defense that defeated the negligence claims. According to defendants, the complaint acknowledged that the hospital district was a municipal corporation, and the complaint contained only claims of negligence. Therefore, defendants argued that they were immune from liability based on negligence pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/1-101 to 10-101 (West 2002)). On December 8, 2006, the circuit court denied the motion. On June 18, 2009, the Harrises filed the instant third amended complaint, which added alternative counts alleging willful and wanton conduct in relation to plaintiff, Vashi, and Chelsea. Responding to each new pleading, including the instant complaint, defendants raised the affirmative defense of the Tort Immunity Act.

¶ 8        On September 11, 2009, pursuant to the parties' stipulation, the claims of Vashi and Chelsea were settled and the circuit court dismissed them with prejudice. On September 28, 2009, the court granted plaintiff's motion to voluntarily dismiss his consortium count with prejudice, and a jury trial began on plaintiff's negligence and willful and wanton counts. At the close of plaintiff's case, the court entered a directed verdict in favor of defendants on the willful and wanton count. Plaintiff's case went to the jury solely on the negligence count. On September 30, 2009, the jury returned a verdict in favor of plaintiff, and the circuit court subsequently entered judgment on the verdict in the amount of $667,216.30.[1]

¶ 9        Defendants timely filed a posttrial motion pursuant to section 2-1202(b) of the Code of Civil Procedure (735 ILCS 5/2-1202(b) (West 2002)). Defendants requested a judgment *non obstante veredicto* (*n.o.v.*), asserting that the Tort Immunity Act immunized them from liability for negligence. Alternatively, defendants requested a new trial solely on the issue of damages, asserting that the court erroneously admitted into evidence the unpaid portion of plaintiff's hospital bill. On October 30, 2009, the circuit court denied defendants' posttrial motion.

¶ 10        The appellate court affirmed the judgment of the circuit court. First, the appellate court

---

[1]The jury returned a verdict in the amount of $665,000. The court granted plaintiff's motion to assess $2,216.30 in costs against defendants.

acknowledged that the Tort Immunity Act immunized defendants from liability in negligence, but concluded that the Tort Immunity Act did not apply to defendants in this case. Rather, the court held that the Illinois Vehicle Code (Vehicle Code or Code) (625 ILCS 5/1-100 *et seq.* (West 2002)) applied to defendants, and that the Code imposes a duty to refrain from negligence. Second, the appellate court held that defendants forfeited their contention regarding the admission into evidence of plaintiff's hospital bill by "failing to object on the record to the nature of plaintiff's presentation of medical bills." No. 5-09-0625 (unpublished order under Supreme Court Rule 23).

¶ 11    Defendants appeal to this court. We subsequently granted the Illinois Municipal League leave to submit an *amicus curiae* brief in support of defendants. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). We will refer to additional pertinent background in the context of our analysis of the issues.

## II. ANALYSIS

¶ 13    We first address (A) defendants' contention that the Tort Immunity Act immunized them from liability for negligence. If we conclude that the Tort Immunity Act controls in this case, plaintiff contends that (B) our decision should apply only prospectively; and (C) the circuit court erred in directing a verdict in favor of defendants on plaintiff's claim of willful and wanton conduct.

## A. Governmental Tort Immunity

¶ 15    This matter is before us on the denial of defendants' request for a judgment *n.o.v.* "[V]erdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on the evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). Where the uncontradicted evidence, viewed in the light most favorable to the plaintiff, establishes a complete defense, a court is justified in granting the defendant's motion for a judgment *n.o.v. Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 311 (1942); see, *e.g.*, *Ries v. City of Chicago*, 242 Ill. 2d 205, 215 (2011) (Tort Immunity Act). An adverse ruling on a motion for a directed verdict or a judgment *n.o.v.* is reviewed *de novo. Evans v. Shannon*, 201 Ill. 2d 424, 427 (2002). In other words, the reviewing court applies the same *Pedrick* standard as did the circuit court. See, *e.g.*, *Schmidt v. Archer Iron Works, Inc.*, 44 Ill. 2d 401, 405 (1970).

¶ 16    Defendants contend that the Tort Immunity Act (745 ILCS 10/1-101 to 10-101 (West 2002)) applies to the instant case and operates to bar plaintiff's cause of action. Pursuant to the Act, Illinois adopted the general principle that local governmental units are liable in tort, but limited this liability with an extensive list of immunities based on specific government functions. *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 489 (2001); *Barnett v. Zion Park District*, 171 Ill. 2d 378, 385-86 (1996). Also, article XIII, section 4, of the 1970 Illinois Constitution provides: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." Ill. Const. 1970, art. XIII, § 4. This

-4-

constitutional provision "now makes the General Assembly the ultimate authority in determining whether local units of government are immune from liability." *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 506 (2006). "Based on these developments, governmental units are liable in tort on the same basis as private tortfeasors unless a tort immunity statute imposes conditions upon that liability." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 192 (1997).

¶ 17    The purpose of the Tort Immunity Act is to protect local public entities and public employees from liability arising from the operation of government. By providing immunity, the General Assembly sought to prevent public funds from being diverted from their intended purpose to the payment of damage claims. The Act grants only immunities and defenses. In other words, the Act does not create duties. Rather, the Act merely codifies existing common law duties, to which the delineated immunities apply. *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 479-80 (2002); *Village of Bloomingdale*, 196 Ill. 2d at 490; 745 ILCS 10/1-101.1(a) (West 2002). Therefore, whether a local public entity owed a duty of care and whether that entity enjoyed immunity are separate issues. Once a court determines that a duty exists, it then addresses whether the Act applies. *Arteman*, 198 Ill. 2d at 480; *Village of Bloomingdale*, 196 Ill. 2d at 490.

¶ 18    In the case at bar, the parties do not dispute that Thompson was a public employee and the hospital district was a municipal corporation and, therefore, a local public entity. 745 ILCS 10/1-202, 1-206, 1-207 (West 2002). Defendants rely on two provisions of the Act. Section 2-109 provides: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2002). Also, section 5-106 provides as follows:

> "Except for willful or wanton conduct, neither a local public entity, nor a public employee acting within the scope of his employment, is liable for an injury caused by the negligent operation of a motor vehicle or firefighting or rescue equipment, when responding to an emergency call, including transportation of a person to a medical facility." 745 ILCS 10/5-106 (West 2002).

A reason for this limited immunity is that if an emergency vehicle operator were haunted by the possibility of facing devastating personal liability for actions taken in the course of responding to an emergency, driver performance would be hampered. See *Young v. Forgas*, 308 Ill. App. 3d 553, 559 (1999); *Hampton v. Cashmore*, 265 Ill. App. 3d 23, 29 (1994).

¶ 19    Defendants contend that these provisions of the Tort Immunity Act immunize them from liability for negligence, and that their application to the uncontradicted evidence entitles them to a judgment *n.o.v.* However, the circuit court denied defendants' section 2-619(a)(9) motion to dismiss and their posttrial motion seeking a judgment *n.o.v.* based on *Bradshaw v. City of Metropolis*, 293 Ill. App. 3d 389 (1997), a decision by the Fifth District of our appellate court. Adhering to *Bradshaw*, the appellate court in the case at bar upheld the circuit court.

¶ 20    In *Bradshaw*, the circuit court granted summary judgment in favor of the defendant municipality based on the Tort Immunity Act. A divided panel of the appellate court reversed and remanded, holding that the Act did not apply to immunize a municipality from liability

for a police officer's alleged negligence. Bradshaw contended "that the Act and the Illinois Vehicle Code *** are in conflict and that where such conflict exists, the more specific statute, the Code, preempts the more general provisions of the Act." *Bradshaw*, 293 Ill. App. 3d at 391.

¶ 21 Section 11-205 of the Vehicle Code provides in pertinent part:

"(b) The driver of an authorized emergency vehicle, when responding to an emergency call *** may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

(c) The driver of an authorized emergency vehicle may:

1. Park or stand, irrespective of the provisions of this Chapter;

2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be required and necessary for safe operation;

3. Exceed the maximum speed limits so long as he does not endanger life or property;

4. Disregard regulations governing direction of movement or turning in specified directions.

\*\*\*

(e) *The forgoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons*, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others." (Emphasis added.) 625 ILCS 5/11-205 (West 2002).

Section 11-907 of the Vehicle Code deals with the operation of vehicles upon the approach of an authorized emergency vehicle. Subsection (b) provides: "*This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway*." (Emphasis added.) 625 ILCS 5/11-907(b) (West 2002). The emphasized portions of sections 11-205 and 11-907 impose a duty on emergency vehicle drivers to refrain from negligence. See *Carter v. Du Page County Sheriff*, 304 Ill. App. 3d 443, 448 (1999); *Sundin v. Hughes*, 107 Ill. App. 2d 195, 200 (1969).

¶ 22 The *Bradshaw* court observed that both the Tort Immunity Act and the Vehicle Code were applicable to the facts of that case. The court opined that a conflict existed between "the protections and duties imposed by" sections 11-205 and 11-907 of the Vehicle Code, and the relevant sections of the Tort Immunity Act. *Bradshaw*, 293 Ill. App. 3d at 393. The court explained that where two statutes exist, one of which is generally applicable and the other of which relates to only one subject, the particular statute prevails. The court viewed the Tort Immunity Act as a general statute. *Id.* The court held:

"[T]he Code is a specific statute containing express provisions establishing a duty and standard of care governing the operation of emergency vehicles by police officers. *** Consequently, a driver of an emergency vehicle can be held liable for negligence arising out of the breach of the duty to use due care in the operation of an emergency vehicle." *Id.* at 395.

The dissenting justice rejected this holding. *Id.* (Maag, J., dissenting). Every other district of our appellate court has rejected this holding. *Carter v. Du Page County Sheriff*, 304 Ill. App. 3d 443, 449-50 (2d Dist. 1999); *Sanders v. City of Chicago*, 306 Ill. App. 3d 356, 363 (1st Dist. 1999); *Young v. Forgas*, 308 Ill. App. 3d 553, 560 (4th Dist. 1999); *Lanning v. Harris*, 342 Ill. App. 3d 965, 967-68 (3d Dist. 2003). We do likewise.

¶ 23   Reference to our decision in *Henrich v. Libertyville High School*, 186 Ill. 2d 381 (1998), is useful. In *Henrich*, the plaintiff's action arose out of the defendants' failure to supervise public school activities. This court considered whether the immunity provided by the relevant sections of the School Code (105 ILCS 5/1-1 *et seq.* (West 1994)), or the immunity provided by section 3-108(a) of the Tort Immunity Act (745 ILCS 10/3-108(a) (West 1994)) controlled in the plaintiff's claim. *Henrich*, 186 Ill. 2d at 383. The plaintiff in *Henrich* argued that the more specific provisions of the School Code prevailed over the general provisions of the Tort Immunity Act. However, this court concluded that it need not decide whether the relevant sections of the Code were more specific than the relevant section of the Act. Rather, the court concluded that the plain language of section 3-108(a) immunized a school district from the failure to supervise an activity on or the use of school property. This court, therefore, held that section 3-108(a) controlled the disposition of the plaintiff's case. *Id.* at 391. This court observed that the immunity in the School Code and the Tort Immunity Act each stood "in its own sphere," with the School Code applying to both private and public schools, and the Tort Immunity Act applying only to public schools. *Id.* at 392.

¶ 24   Relying on *Henrich*, the appellate court in *Carter*, *Sanders*, *Young*, and *Lamming* reasoned that it need not decide whether sections 11-205 and 11-907 of the Vehicle Code are more specific and, therefore, prevail over the Tort Immunity Act. Rather, those decisions held that the Vehicle Code and the Tort Immunity Act each stands "in its own sphere" and that "the statutes each address different actors under different circumstances. *** Thus, the statutes are not in conflict ***." *Lanning*, 342 Ill. App. 3d at 968.

¶ 25   We agree and so hold. A court must construe statutes relating to the same subject matter with reference to one another so as to give effect to the provisions of each, if reasonable. *Henrich*, 186 Ill. 2d at 391-92. Sections 11-205 and 11-907 of the Vehicle Code provide certain privileges both to public and private employees who operate emergency vehicles. In contrast, the Tort Immunity Act does not apply to private employees, but provides immunity only to public employees absent willful and wanton conduct. Therefore, these sections of the Vehicle Code do not abrogate the Tort Immunity Act.[2] See *Sanders*, 306 Ill. App. 3d at 363; *Carter*, 304 Ill. App. 3d at 450. Under the plain language of section 5-106 of the Tort Immunity Act, the legislature has chosen to grant immunity from negligence liability to public employees like Thompson. See *Young*, 308 Ill. App. 3d at 560. For the foregoing reasons, *Bradshaw v. City of Metropolis*, 293 Ill. App. 3d 389 (1997), is hereby overruled.

---

[2]During oral argument, counsel for plaintiff conceded that if we held that these sections of the Vehicle Code prevailed in plaintiff's cause of action, then we would effectively delete the explicit language of section 5-106 as it pertains to public ambulances. This, of course, we cannot do. See *Henrich*, 186 Ill. 2d at 394.

¶ 26    We conclude that section 5-106 of the Tort Immunity Act controls the disposition of plaintiff's cause of action for ordinary negligence against defendants. We hold that the uncontradicted evidence, viewed in the light most favorable to plaintiff, establishes a complete defense under section 5-106, and that defendants are entitled to a judgment *n.o.v.* Therefore, the judgments of the appellate and circuit courts are reversed. See *Ries v. City of Chicago*, 396 Ill. App. 3d 418, 428 (2009), *aff'd*, 242 Ill. 2d 205 (2011) (reviewing court will reverse verdict without remand where circuit court erroneously denied motion for judgment *n.o.v.*).

¶ 27                        B. Nonretroactive Application

¶ 28    In the event of our overruling *Bradshaw* and reversing the judgment of the appellate court, plaintiff requests that we apply our decision only prospectively. In other words, plaintiff argues that our opinion should apply only to causes of action brought subsequent to the filing of this opinion. We decline plaintiff's request.

¶ 29    Generally, a judicial decision is presumed to apply both retroactively and prospectively. *Tosado v. Miller*, 188 Ill. 2d 186, 196 (1999). However, a court may, under certain circumstances, decide to apply a decision only prospectively. In deciding whether to apply a decision in a civil case only prospectively, a court utilizes a three-factor analysis adopted from *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971). See *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82, 87-91 (1997); *Board of Commissioners of the Wood Dale Public Library District v. County of Du Page*, 103 Ill. 2d 422, 426-27 (1984).

¶ 30    First, the decision *must* establish a new rule of law, either by overruling clear past precedent on which litigants have relied, or by deciding an issue of first impression where the resolution was not clearly foreshadowed. This initial factor is a threshold requirement for solely prospective application of a new decision. *Tosado*, 188 Ill. 2d at 197; *Bogseth v. Emanuel*, 166 Ill. 2d 507, 515 (1995); see *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 496 (1968) (observing that issue of nonretroactive application of decision need be addressed only where there is a clearly declared judicial doctrine upon which litigant relied, which was overruled in favor of a new rule). If this requirement is satisfied, the remaining factors are: whether, given the purpose and history of the new rule, its operation will be advanced or hampered by nonretroactive application; and whether, after balancing the equities, injustice or hardship would result if the decision is applied retroactively. *Bogseth*, 166 Ill. 2d at 515; *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 329 (1989); *Elg v. Whittington*, 119 Ill. 2d 344, 357 (1987).

¶ 31    Our decision in the case at bar does not establish a new principle of law by overruling clear past precedent. Initially, *Bradshaw* was hardly clear past precedent. No other panel of our appellate court before or since *Bradshaw* has reached its conclusion. By the time plaintiff's cause of action arose, the appellate court decisions rejecting *Bradshaw* constituted "the majority view." *Lanning*, 342 Ill. App. 3d at 968. Indeed, the appellate court in the case at bar was not bound to follow *Bradshaw*, and could have disavowed *Bradshaw* and joined its colleagues from every other appellate district who have considered this issue. In any event, resolving a conflict among the districts of our appellate court by choosing one

appellate court decision over another does not constitute overruling clear past precedent. *Castaneda*, 132 Ill. 2d at 329-30. Rather, our decision today represents a clarification of the law, and not a clean break with past precedent. See *Landahl v. PPG Industries, Inc.*, 746 F.2d 1312, 1314-15 (7th Cir. 1984).

¶ 32    Also, we do not decide an issue of first impression whose resolution was not clearly foreshadowed. Our holding, that neither the hospital district nor Thompson was liable for the injuries caused by the negligent operation of his ambulance when he was responding to an emergency call (see 745 ILCS 10/5-106 (West 2002)), simply applies section 5-106 of the Tort Immunity Act to the facts of this case. This is not a novel issue; innovative principles are not necessary to resolve it; and this court had not resolved this issue in prior cases in a manner contrary to our decision today. This decision does not represent such an abrupt and fundamental shift in doctrine as to constitute an entirely new rule that replaces an older one. See *Hanover Shoe*, 392 U.S. at 496-97. Rather, our decision today was foreshadowed by the plain language of section 5-106. We simply adhere to the legislative intent expressed in section 5-106, which requires this result. See *Tosado*, 188 Ill. 2d at 197.

¶ 33    Because establishing a new principle of law is a threshold requirement for limiting a new decision to only prospective application, and because our decision today does not cross that threshold, we have no need to consider the additional two factors. See *Heastie v. Roberts*, 226 Ill. 2d 515, 536-37 (2007).

¶ 34    In light of the above holdings, we need not address defendants' alternative request for a new trial solely on the issue of damages.

¶ 35    C. Willful and Wanton Conduct

¶ 36    In the event of the above holdings, plaintiff seeks cross-relief. The circuit court directed a verdict in favor of defendants on plaintiff's claim of willful and wanton conduct. Plaintiff contends that this issue should have been submitted to a jury. Although motions for directed verdicts and motions for judgments *n.o.v.* are made at different times, they raise the same questions and are governed by the same rules of law. *Maple v. Gustafson*, 151 Ill. 2d 445, 453 n.1 (1992); *Pedrick*, 37 Ill. 2d at 498-99.

¶ 37    The following evidence was adduced in plaintiff's case in chief. Consistent with *Pedrick*, we have taken care to include all arguably relevant evidence that is even marginally favorable to plaintiff. See *Evans v. Shannon*, 201 Ill. 2d 424, 428 (2002). Based on prior emergency responses, Thompson estimated the travel time from the hospital to the nursing home at five minutes. Thompson began his drive to the nursing home with siren and emergency lights activated. The siren was continuously activated when Thompson left the hospital, took Jon Street to U.S. Route 45 (Tenth Street), and drove east to Ferry Street, which he took to Ninth Street. However, once Thompson turned onto Ninth Street and proceeded east, he turned off the siren and activated it only as he approached every intersection from approximately 100 to 150 feet away. This continued for the approximately six blocks up to and including Butler Road. Thompson testified that as he approached Butler Road: "I hit a couple of quick blasts before I came up to the intersection." Thompson believed that it was within his discretion as driver to use the siren.

¶ 38    Also, as Thompson proceeded east on Ninth Street, he did not make a complete stop at all intersections, including those with stop signs. Rather, Thompson slowed down at each intersection. He stopped if an intersection was not clear. However, he did not come to a complete stop if an intersection was clear. The intersection of Ninth Street and Butler Road is controlled by a stop sign on Ninth Street. Drivers on Ninth Street are required to stop at the intersection, but drivers on Butler Road are not required to stop. Thompson did not make a complete stop at the stop sign at Butler Road. Rather, Thompson eased into the intersection with his foot on the brake to make a complete stop if necessary. Trees on the corner to his left obstructed his view, so Thompson had to proceed past the point of the stop sign to look both ways. He saw no oncoming vehicles.

¶ 39    Thompson estimated his speed at 10 miles per hour. However, Vashi, who was sitting in the front passenger seat of the Harris vehicle, testified that she saw the ambulance prior to the impact: "He [Thompson] was coming very quickly. I would say 40-plus miles an hour. It was just very quickly, because it was just like a streak of light."

¶ 40    At the close of plaintiff's case, defendants moved for a directed verdict on plaintiff's claim of willful and wanton conduct. The circuit court entered a directed verdict in favor of defendants. Plaintiff filed a cross-appeal from the directed verdict. The appellate court held that its affirmance of the judgment on the negligence count rendered plaintiff's cross-appeal moot. No. 5-09-0625 (unpublished order under Supreme Court Rule 23). Seeking cross-relief before this court, plaintiff contends that there was sufficient evidence from which a jury could find willful and wanton conduct.

¶ 41    Section 1-210 of the Tort Immunity Act defines willful and wanton conduct as follows:

> " 'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." 745 ILCS 10/1-210 (West 2002).

The term "willful and wanton" includes a range of mental states, from actual or deliberate intent to cause harm, to conscious disregard for the safety of others or their property, to utter indifference for the safety or property of others. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007). Further, this definition of willful and wanton conduct is entirely consistent with this court's long-standing case law. *Id.* at 235-42; accord *Pfister v. Shusta*, 167 Ill. 2d 417, 421 (1995); Illinois Pattern Jury Instructions, Civil, No. 14.01 (3d ed. 1993). Whether conduct is willful and wanton depends on the circumstances of each case. *Murray*, 224 Ill. 2d at 238.

¶ 42    Although the issue of willful and wanton conduct is usually a question of fact for the jury, a verdict may be directed on this issue if the evidence, viewed in its light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. See *Pedrick*, 37 Ill. 2d at 510; *Stamat v. Merry*, 78 Ill. App. 3d 445, 449-50 (1979); *Lewandowski v. Bakey*, 32 Ill. App. 3d 26, 29 (1975). Our standard of review is *de novo*. *Evans*, 201 Ill. 2d at 427.

¶ 43    In response to defendants' motion for a directed verdict, plaintiff conceded that Thompson did not intend to harm plaintiff. Rather, plaintiff contended that Thompson exhibited a conscious disregard for the safety of others. The circuit court found that Thompson did not act with utter indifference to, or a conscious disregard for, the safety of others. We agree with the circuit court on this issue.

¶ 44    The jury found that Thompson's conduct was negligent. Although the siren was not continuously activated, the failure to activate emergency equipment does not by itself constitute willful and wanton conduct. *Williams v. City of Evanston*, 378 Ill. App. 3d 590, 600 (2007). The evidence, viewed in the light most favorable to plaintiff, shows that at all times Thompson had his emergency lights activated. Further, approaching every intersection on Ninth Street, including the intersection at Butler Road, Thompson blasted his siren from approximately 100 feet away, and slowed down and looked for traffic. This conduct falls far short of establishing that Thompson consciously disregarded, or was utterly indifferent to, the safety of others.

¶ 45    As additional evidence of willful and wanton conduct, plaintiff refers to Vashi's testimony that Thompson entered the intersection driving in excess of 40 miles per hour. The circuit court may not enter a directed verdict "if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Maple*, 151 Ill. 2d at 454. However, driving at an excessive rate of speed alone is not decisive as to the issue of willful and wanton conduct. Rather, speed is only a single circumstance in the totality of the evidence presented to establish willful and wanton conduct. *Bartolucci v. Falleti*, 382 Ill. 168, 175-76 (1943); see *Murphy v. Vodden*, 109 Ill. App. 2d 141, 149-50 (1969). Courts have held that although emergency vehicle drivers entered intersections at excessive speeds, the totality of the circumstances nonetheless failed to show that the drivers consciously disregarded or were utterly indifferent to the safety of others. See, *e.g.*, *Hampton*, 265 Ill. App. 3d at 31 (ambulance); *Bosen v. City of Collinsville*, 166 Ill. App. 3d 848, 850 (1987) (police); *Lipscomb v. Lewis*, 619 N.E.2d 102, 105-06 (Ohio Ct. App. 1993) (ambulance).

¶ 46    If there is insufficient evidence to sustain an allegation of willful and wanton conduct, the circuit court ought to withdraw that issue from the jury's consideration. *Robertson v. New York Central R.R. Co.*, 388 Ill. 580, 586 (1944); *Bartolucci*, 382 Ill. at 176. After carefully reviewing the record, we uphold the circuit court's directed verdict in favor of defendants on plaintiff's willful and wanton count. However, because the circuit court erroneously denied defendants' motion for a judgment *n.o.v.*, we reverse its judgment in favor of plaintiff.

¶ 47                    III. CONCLUSION

¶ 48    For the foregoing reasons, the judgment of the appellate court is reversed and the judgment of the circuit court of Massac County is affirmed in part and reversed in part.

¶ 49    Appellate court judgment reversed.

¶ 50    Circuit court judgment affirmed in part and reversed in part.

¶ 51    CHIEF JUSTICE KILBRIDE, dissenting:

¶ 52    I believe that the trial and appellate courts' respective judgments, relying on *Bradshaw v. City of Metropolis*, 293 Ill. App. 3d 389 (1997), were correct and should be affirmed. Accordingly, I respectfully dissent.

¶ 53    At issue in this case is the proper construction of the respective provisions of the Tort Immunity Act and the Vehicle Code pertaining to the operation of emergency vehicles. Sections 11-205 and 11-907 of the Vehicle Code impose a duty on emergency vehicle operators to operate their vehicles with "due regard for the safety of all persons." 625 ILCS 5/11-205(e), 11-907(b) (West 2002). Moreover, in pertinent part, section 11-205 authorizes emergency vehicle operators to "[p]roceed past a red or stop signal or stop sign, but *only after slowing down as may be required and necessary for safe operation*," and to "[e]xceed the maximum speed limits *so long as he does not endanger life or property*." (Emphases added.) 625 ILCS 5/11-205(c) (West 2002). Section 11-205 further requires emergency vehicles, when not observing usual rules of road use, to employ an "audible signal when in motion or visual signals." 625 ILCS 5/11-205(d) (West 2002). Consistent with these provisions, our appellate court has construed sections 11-205 and 11-907 to impose a duty on emergency vehicle drivers to refrain from negligence. *Carter v. Du Page County Sheriff*, 304 Ill. App. 3d 443, 448 (1999) (citing *Bradshaw*, 293 Ill. App. 3d at 395); see also *Sundin v. Hughes*, 107 Ill. App. 2d 195, 200 (1969).

¶ 54    Nonetheless, section 5-106 of the Tort Immunity Act provides as follows:

> "Except for willful or wanton conduct, neither a local public entity, nor a public employee acting within the scope of his employment, is liable for an injury caused by the negligent operation of a motor vehicle or firefighting or rescue equipment, when responding to an emergency call, including transportation of a person to a medical facility." 745 ILCS 10/5-106 (West 2002).

Thus, in stark contrast with the provisions of the Vehicle Code discussed above, section 5-106 of the Tort Immunity Act immunizes emergency vehicle operators from the negligent operation of their vehicles.

¶ 55    In my opinion, this is an obvious and undeniable conflict between the respective provisions of the Vehicle Code and the Tort Immunity Act addressing the operation of emergency vehicles. Consequently, I disagree with the majority's determination that the statutes do not conflict.

¶ 56    The majority reasons that there is no conflict between the statutes because the Vehicle Code and the Tort Immunity Act each stands "in its own sphere" and "the statutes each address different actors under different circumstances." (Internal quotation marks omitted.) *Supra* ¶ 24. The majority's conclusion, however, is not supported by the undisputed facts of this case. Specifically, there is no question that the defendant driver of the emergency vehicle in this case was operating an authorized emergency vehicle in response to an emergency call at the time of his traffic accident with plaintiff's vehicle. These facts involve *both* statutes at issue in this case because it implicates the duty of emergency vehicle operators to refrain from negligence found in the Vehicle Code and the immunity from negligence granted to

-12-

those same actors by the Tort Immunity Act. Thus, contrary to the majority's conclusion, this case presents a scenario where the spheres, actors, and circumstances overlap. Simply stated, the Vehicle Code's clear and unambiguous imposition of a duty to operate an emergency vehicle with "due regard to the safety of all persons" cannot be reconciled with the Tort Immunity Act's blanket immunity afforded to emergency vehicle operators against claims of negligence.

¶ 57    When, as here, there are apparent conflicts between two statutes, this court will attempt to construe them together, *in pari materia*, if such an interpretation is reasonable. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). As in all cases involving statutory interpretation, however, legislative intent is the most important consideration. *Abruzzo*, 231 Ill. 2d at 332. Ultimately, "[w]hen a general statutory provision and a more specific one relate to the same subject, we will presume that the legislature intended the more specific statute to govern." *Abruzzo*, 231 Ill. 2d at 346; see also *Moore v. Green*, 219 Ill. 2d 470, 480 (2006) (citing *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002)).

¶ 58    Here, the provisions of the Vehicle Code imposing a duty on emergency vehicle operators to refrain from negligence cannot be reasonably construed together with the provisions of the Tort Immunity Act granting immunity from negligence for emergency vehicle operators. Moreover, the Vehicle Code is much more specific than the Tort Immunity Act on emergency vehicles. For example, while the Tort Immunity Act generally references emergency vehicles in the context of immunity, the Vehicle Code details a variety of exemptions from the normal road rules, including permitting emergency vehicles to proceed past a stop sign or signal after slowing down as may be required and necessary for safe operation, exceeding the posted speed limit so long as no life or property is endangered, and employing audible or visual signals when in motion. 625 ILCS 5/11-205(c), (d) (West 2002). The Vehicle Code also expressly imposes a duty on emergency vehicles to operate with "due regard for the safety of all persons." 625 ILCS 5/11-205(e), 11-907(b) (West 2002). In accordance with the clear legislative intent in the Vehicle Code to impose a duty on emergency vehicle operators to refrain from negligence, I believe, as the lower courts similarly concluded, that the Vehicle Code's specific provisions detailing the duty and obligation of emergency vehicle operators to the public should control over the general immunity contained in the Tort Immunity Act. See, *e.g.*, *Abruzzo*, 231 Ill. 2d at 346. For these reasons, I believe that the judgments of the trial and appellate courts should be affirmed.