2021 IL App (2d) 200461-U
No. 2-20-0461
Order filed April 28, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DANA K. FOULKS, Individually and as Mother and Next Friend of T.F., a Minor, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19-L-66 |
| COMMUNITY UNIT SCHOOL DISTRICT 428 and CHRISTOPHER JUDKINS, | ) ) ) | Honorable Bradley J. Waller, |
| Defendant-Appellees. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Hudson and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court did not err in dismissing plaintiff's amended complaint with prejudice when the complaint did not allege sufficient facts to state a claim of willful and wanton conduct.

¶ 2   Plaintiff, Dana K. Foulks, individually and as mother and next friend of her minor son,

T.F., sued defendants, Community Unit School District 428 (District) [1] and Christopher Judkins

_____

[1] Although plaintiff named the "Community Unit School District 428" as defendant,

defendants note, in identical footnotes in their pleadings below and their brief before the appellate

(Judkins) (collectively, defendants), for injuries T.F. sustained during a freshmen orientation program, alleging Judkins's conduct was willful and wanton where he instructed T.F. to run in the gymnasium in flip-flops. Defendants filed a combined motion to dismiss Foulks's amended complaint for failure to state a claim upon which relief could be granted (735 ILCS 5/2-615) (West 2018)) and on the basis of tort immunity (735 ILCS 2-619(a)(9) (West 2018)). The circuit court granted defendants' motion with prejudice, and Foulks appeals, arguing that dismissal was unwarranted. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On August 10, 2018, T.F. attended a freshmen orientation program put on by De Kalb High School. During that program, Judkins was supervising a group of students in the high school gymnasium and had the students line up at one end of the court, run to the other end, touch the wall, and run back (commonly referred to as a "down-and-back"). T.F. was wearing flip-flop sandals and, when it was his time to run, informed Judkins of his footwear and that he "probably should not run." Judkins "demanded" that T.F. participate in the down-and-back; T.F. complied and, while running, "tumbled to the floor because his feet became entangled in the flip-flops and was injured."

---

court, that school districts do not have the capacity to sue or be sued, citing section 10-2 of the School Code (105 ILCS 5/10-2 (West 2018)) and *Board of Educ. Of Bremen High School Dist. No. 228 v. Mitchell*, 387, Ill. App. 3d 117, 120 (2008). Instead, defendants identify the proper party as the "Board of Education of Community Unit School District 428." We will refer to the entity defendant as "District" to comport with the pleadings.

¶ 5    Foulks, as mother and next friend of T.F., filed her initial two-count complaint against defendants on October 8, 2019, alleging the above set of facts. The complaint alleged "willful and wanton misconduct" (count I) and requested that she be reimbursed for the medical bills associated with T.F.'s fall pursuant to section 15 of the Rights of Married Persons Act (count II), often referred to as the "Family Expense Act." 750 ILCS 65/15 (West 2018). The complaint alleged that defendants breached their duty because they

"(a) Recklessly required [T.F.] to engage in physical running after [T.F.] informed [Judkins] that he shouldn't run because of his flip-flops;

(b) Recklessly failed to provide [T.F.] with the proper equipment, that is, secured shoes, for an act of physical running; and

(c) Recklessly failed to assess the suitability of the freshman students assembled for orientation including [T.F.] to undergo any physical activity, such as, running in that physical education was not [Judkins's] educational specialty or educational training."

¶ 6    Defendants filed a combined motion to dismiss Foulks's complaint, pursuant to section 2-619.1 of the Code of Civil Procedure (Code). 735 ILCS 5/2-619.1 (West 2018). Relevant to the issue on appeal, defendants' 2-615 argument asserted that count I provided only conclusory allegations against defendants and that those allegations were insufficient to sustain of claim of willful and wonton conduct required under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act). 745 ILCS 10/1-210 (West 2018). After hearing argument on defendants' motion, the circuit court dismissed Foulks's complaint without prejudice, pursuant to defendants' 2-615 argument. The court allowed Foulks to file an amended complaint, which she did a month later.

¶ 7    The amended two-count complaint again alleged "willful and wanton misconduct" (count I) and requested reimbursement for T.F.'s medical bills pursuant to the "Family Expense Act" (count II). The amended complaint contained several additional factual allegations absent from the initial complaint: a letter informing parents of the freshmen orientation did not require or suggest that children wear special clothing or footwear; Foulks did not know that T.F. would be directed to participate in any physical activity; Judkins was not a physical education teacher; the school did not schedule the down-and-back exercise and it had nothing to do with the orientation; the school has a policy under which students in gym class were required to wear proper footwear to participate in physical activity (i.e. not flip-flops); Judkins knew, or should have known, that policy; Judkins knew, or should have known, of the danger that would exist if he directed T.F. to run in flip-flops; and it is common knowledge that running in flip-flops is not safe and would likely cause the runner to fall. The amended complaint supported its "common knowledge" allegation with two quotes from articles on the Internet discussing the dangers of wearing flip-flops while doing various activities (*i.e.*, running, walking long distances, driving, and cutting grass). The amended complaint alleged that defendants breached their duty because they

"(a) Recklessly required [T.F.] to run despite having been informed by [T.F.] that he was wearing flip-flops and that he should not be running for that reason;

(b) Recklessly failed to provide [T.F.] with the proper equipment, i.e., secured and proper shoes, for running;

(c) Recklessly failed to assess the suitability of the freshman assembled for orientation including [T.F.] to undergo any physical activity including running;

(d) Recklessly placed a teacher in charge of these minor children who was not a physical education or similarly trained teacher and had no specialty or training in physical education including what footwear is appropriate for running;

(e) Recklessly caused the children present to run when there was no reason to do so and without first informing the parents that children present for orientation would be engaging in physical activities including running; and

(f) Showed a conscious disregard for the safety of [T.F.] by requiring him to run on the gym floor in flip-flops when [Judkins] knew or should have known he was wearing flip-flops and that wearing flip-flops created a high probability of harm."

¶ 8     Defendants again filed a combined motion to dismiss Foulks's amended complaint pursuant to section 2-619.1 of the Code. Relevant here, defendants argued that Foulks's amended complaint failed to allege any facts to establish a claim for willful and wanton conduct as required by the Tort Immunity Act, because the complaint did not argue that (1) the District knew of any prior similar injuries involving students wearing flip-flops, (2) the District engaged in a "course of action" of utter indifference or conscious disregard for T.F.'s welfare, or (3) the District knew that the act of running in flip-flops is an inherently dangerous activity and knew, or should have known, that there was a high degree of probability that substantial harm would result from doing so. Defendants also argued that Foulks's assertion of a policy prohibiting students from wearing flip-flops during gym class was insufficient to establish "a course of action."

¶ 9     In July 2020, the circuit court held a hearing via teleconference (due to the ongoing COVID-19 pandemic) on defendants' combined motion to dismiss Foulks's amended complaint. After hearing arguments and posing questions to the attorneys, the court rendered its decision. The court first acknowledged that, although there were two counts in the amended complaint, the

parties agreed that the first count was a prerequisite for the second and that "if Count 1 falls, Count 2 falls[.]" The court limited its findings accordingly. The court then identified the additions to the amended complaint, including plaintiff's assertions that (1) there is an unwritten policy (during argument, Foulks's attorney conceded that there was no written policy) that students are required to wear proper footwear and not allowed to wear flip-flops while engaging in any physical activity and (2) that "it's common knowledge that running in flip-flops is not safe and likely to cause the runner to fall."

¶ 10    The circuit court identified the elements for Foulks's willful and wanton conduct claim:

> "So the elements for willful and wanton, a cause of action must allege facts establishing the defendant knew of prior injuries involving students wearing flip-flops, the defendant engaged in a course of action of utter indifference to or conscious disregard for [T.F.'s welfare, or the defendant knew that the act of running in flip-flops is an inherently dangerous activity, such that there was a high probability that substantial harm would result."

The court then found that the Tort Immunity Act applied to defendants (and recognized the parties' agreement to that finding) and that the Act requires "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others."

¶ 11    The circuit court then discussed *Floyd v. Rockford Park District*, 355 Ill. App. 3d 695 (2005), which "requires *** prior knowledge of similar acts to establish a course of action[,]" *Toller v. Plainfield School District 202*, 221 Ill. App. 3d 554 (1991), which "requires action with knowledge that such action posed a high probability of serious physical injury" and *Oravek v.*

*Community School District 146*, 264 Ill. App. 3d 895 (1994), for the proposition that "willful and wanton [conduct] should shock the conscience[.]"

¶ 12     The circuit court then turned its attention to the changes from plaintiff's initial and amended complaints, namely the addition that the District had an unwritten policy that students should not wear flip-flops in the gym. The court then asked whether "an alleged violation *** of an unwritten policy rise[s] to the level of a violation of a statute, and even if it does, does it rise to the level of an inherently dangerous situation or dangerous conduct." The court determined that

> "*Floyd* says no, the mere allegation that there's been a violation of a policy does not in and of itself rise to the level of willful and wantonness.
>
> Again, prior knowledge of similar acts is required to establish a course of action, and although I'm intrigued by the allegation of common knowledge, it seems to me that reading *Floyd* and the other cases that impact this first amended complaint, common knowledge is not referenced, and as a result, I do not think that's the standard.
>
> The Internet citations in my view don't provide sufficient bases that running in flip-flops is inherently dangerous such that a high probability of substantial harm would result."

The court then found plaintiff had "not pled a legally recognizable cause of action that [could] survive a 2-615 motion to dismiss."

¶ 13     The circuit court initially stated it would dismiss the case without prejudice to allow for Foulks to replead. Foulks's attorney asked that the decision be made with prejudice, so that he could appeal the decision:

> "THE COURT: Mr. Prindable [plaintiff's attorney], I did review with great interest your argument about the issue of whether it's appropriate for a court to review this or if it's appropriate for it to, quote, unquote, go to the jury, and I'm still convinced at this point that

that's my job, and I think there's enough case law to support that, so I am going to grant the motion, Mr. Prindable, but it's going to be without prejudice to you repleading. So in light of my ruling, Mr. Prindable, how much time do you need?

MR. PRINDABLE: Your Honor, would you mind dismissing it with prejudice—

THE COURT: You want to—

MR. PRINDABLE: --at this time? I would rather see—

THE COURT: You want to take it up?

MR. PRINDABLE: --what the Second District—yeah, I want to take it up, your Honor.

THE COURT: Okay, very good. I have—any objection by the—by you, Mr. Manning, or Mr. McKeown [defendants' attorneys]?

MR. MANNING: No, your Honor, no objection from us.

THE COURT: Okay. Then it will be with prejudice.

Yeah, I'm very intrigued to see what the Second will do with this. As Mr. Prindable has expressly stated, I too was very surprised at the plethora of gymnasium cases, and although there is no case directly on point, there's certainly a lot of analogous cases, it seems to me, on both sides, but right, wrong, or indifferent, gentlemen, that's the ruling of this Court, and it will be a—it will be a dismissal with prejudice, and we'll see what the Second District does with it."

This appeal timely followed.

¶ 14                                    II. ANALYSIS

¶ 15    Foulks contends that the circuit court erred in dismissing her amended complaint because it sufficiently alleged both (1) defendants' utter indifference to, or conscious disregard for, T.F.'s

safety by Judkins's "demand[ing]" T.F. run in flip-flops and (2) that Judkins knew of the impending danger by forcing T.F. to run in flip-flops (presented as "common knowledge" as demonstrated from the two Internet article quotes) and failed to exercise ordinary care to prevent such danger. Foulks also argues that both the Tort Immunity Act and Illinois Pattern Jury Instructions' (IPI) definitions of willful and wanton conduct do not require a plaintiff to include factual allegations of prior injuries or that defendants knew of a high probability of serious physical harm, and "[i]t would be incongruous for courts to create a pleading standard more stringent than the degree of proof required for the action pled." Thus, Foulks concludes, the case should have survived defendants' 2-615 motion to dismiss and be presented to a jury as a factual dispute. We analyze Foulks's arguments below.

¶ 16   Foulks's amended complaint was dismissed pursuant to section 2-615 of the Code. 735 ILCS 5/2-615 (West 2018). A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint, based on defects apparent on its face. *Marshall v. Burger King Corp.* 222 Ill. 2d 422, 429 (2006). Therefore, we review a circuit court's granting of a section 2-615 motion *de novo*. *Jane Doe-3 v. McLean County Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, ¶ 15. In conducting this review, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Marshall*, 222 Ill. 2d at 429. The critical question in reviewing a section 2-615 motion is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Jane Doe-3*, 2012 IL 112479 at ¶ 16 "Thus, a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall*, 222 Ill. 2d at 429.

¶ 17    Illinois is a fact-pleading jurisdiction, meaning a "plaintiff's complaint must allege facts, not mere conclusions, that establish a viable cause of action." *Bogenberger v. Pi Kappa Alpha Corporation, Inc.*, 2018 IL 120951, ¶ 35. A pleading that paraphrases the elements of a cause of action in conclusory terms is insufficient, but a plaintiff need not set out all her evidence in the complaint. *Paul v. County of Ogle*, 2018 IL App (2d) 170696, ¶ 34. A fact is considered well pleaded if a plaintiff has clearly set out the ultimate fact she intends to prove. *Id.* "The drafter of a complaint must strike a balance between pleading too little or too much factual detail; however, distinguishing between conclusions, ultimate facts, and evidentiary facts is difficult because the classification of an allegation depends on the context of a particular case." *Woodson v. North Chicago Community School District No. 64*, 187 Ill. App. 3d 168, 172 (1989). A review of relevant decisions of this court demonstrates such. Compare *Tijerina v. Evans*, 150 Ill. App. 3d 288 (1986) (affirming circuit court's 2-615 dismissal where there were no specific allegations that showed why instructor knew, or should have known, that open and locked bleachers posed impending danger to students playing wiffleball in the gym) with *Bowers v. Du Page County Regional Board of School Trustees District No. 4*, 183 Ill. App. 3d 367 (1989) (reversing circuit court's 2-615 dismissal where plaintiff alleged defendants knew, or should have known, that failure to adequately supervise and to provide safe and adequate matting under a rope ladder would result in injury to plaintiff).

¶ 18    Foulks's amended complaint alleged a personal injury action based on Judkins's supervision of T.F., labeled as "willful and wanton misconduct." No separate or distinct tort exists for willful and wanton conduct; rather willful and wanton conduct is regarded as an aggravated form of negligence. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 235 (2010). Both parties agree that the Tort Immunity Act provides defendants with immunization from ordinary

negligence claims; requiring instead that a plaintiff must demonstrate that such defendants engaged in willful and wanton conduct:

"neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury." 745 ILCS 10/3-108(a) (West 2018).

See also *id.* § 2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable"). The Tort Immunity Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Id.* § 1-210. Thus, to sufficiently plead that defendant engaged in willful and wanton conduct, a plaintiff must allege duty, breach, proximate cause, and that defendant engaged in a course of action that showed a deliberate intention to harm or an utter indifference to or conscious disregard for the plaintiff's welfare. *Floyd*, Ill. App. 3d at 700.

¶ 19 "Willful and wanton conduct differs from mere negligence in that it requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable [person.]" (Internal quotation marks omitted.) *Torres v. Peoria Park District*, 2020 IL App (3d) 190248, ¶ 24. " 'It is essential that plaintiff allege and establish that when the defendant acted, *** he had knowledge, or should have had the knowledge under the circumstances, that his conduct posed a high probability of serious physical harm to others.' " *Choice v. YMCA of McHenry County*, 2012 IL App (1st) 102877, ¶ 72 (quoting *Pomrehn v. Crete-Monee High School District*, 101 Ill. App. 3d 331, 335 (1981)). A qualitative difference necessarily exists between willful and wanton conduct

and ordinary negligence; willful and wanton conduct should shock the conscience. *Oravek*, 264 Ill. App. 3d 895, 900. Although the issue of whether a defendant's actions amounted to willful and wanton conduct is typically a question of fact for the jury to decide, a court can decide, as a matter of law, whether a plaintiff's allegations state a cause of action. *Leja v. Community Unit School District 300*, 2012 IL App (2d) 120156, ¶ 11.

¶ 20    Foulks initially argues that she sufficiently pled that defendants engaged in willful and wanton conduct by instructing T.F. to run in flip-flops. She avers that there is no need for her to have pled that there were prior similar injuries or that there was a risk of serious injury, taking issue with our 2005 decision *Floyd v. Rockford Park District*, 355 Ill. App. 3d 695, and the supreme court's 2017 decision *Barr v. Cunningham*, 2017 IL 120751.

¶ 21    In *Floyd*, plaintiff, a participant in a summer day-camp, sued the park district for injuries he sustained when a fellow camper intentionally struck him on the head with a metal golf club. 355 Ill. App. 3d at 697. Pertinent here, the plaintiff's complaint alleged that the park district acted with an "utter indifference and conscious disregard for the safety of others" by (1) allowing the camper access to the metal golf club, when they knew of his violent past behavior; (2) failing to supervise the camper as he used the golf club; (3) knowing the camper was capable of injuring another registered camper; (4) permitting the camper to use the metal golf club despite the previously instituted rule prohibiting their use; (5) failing to discontinue the use of metal golf clubs when they knew the use of metal sporting equipment was dangerous; and (6) allowing the camper to remain at the playground after he acted violently toward supervisors and other campers. *Id.* at 698. The plaintiff alleged that his injuries were the direct and proximate result of one or more of those acts or omissions. *Id.* We held that the plaintiff failed to plead facts sufficient to establish "a course of action," stating "[a]bsent from plaintiff's complaint is any allegation that registered

participants *** had used metal golf clubs *** to batter other children, supervisors, or anyone else. Prior knowledge of similar acts is required to establish a 'course of action.' " *Id.* at 701. Thus, we affirmed the circuit court's judgment granting the defendant's section 2-615 motion to dismiss. *Id.* at 705.

¶ 22　Foulks argues that the authority *Floyd* relied on in holding that a course of action requires prior knowledge is distinguishable because it focused on dangerous conditions instead of a failure to supervise. Her argument is inapposite, especially in light of our supreme court's decision in *Barr*. In *Barr*, the supreme court affirmed the trial court's finding that plaintiff failed to present evidence of any willful and wanton conduct (unlike here, *Barr* involved a directed verdict), where a student suffered an eye injury while playing floor hockey with plastic sticks and a squishy ball. 2017 IL 120751, ¶ 17. The court rejected plaintiff's argument that the teacher was aware that balls could fly above the students' waists and could hit them in the eye, which necessitated sending the issue of willful and wanton conduct to the jury. *Id.* ¶ 19. In so doing, the court stated,

> "Illinois courts define willful and wanton conduct, in part, as the failure to take reasonable precautions after 'knowledge of impending danger.' [Citations.] In this case, plaintiff failed to introduce any evidence at trial that [the teacher] either knew or had reason to believe that a serious injury could occur as a result of students playing floor hockey. The students had played the same game with the same equipment on multiple occasions, and no student had been injured. Nevertheless, the appellate majority below held that willful and wanton conduct could be found even though [the teacher] had no 'specific notice' of 'a prior injury to a floor hockey player's eye with the use of a safety ball.' [Citation.] While we agree with the appellate court that evidence of prior incidents need not involve the same specific injury as that suffered by plaintiff, here there was no evidence at all of prior

injuries. Plaintiff did not present evidence of any other injuries suffered by anyone playing floor hockey under any circumstances.

> To establish willful and wanton conduct in the absence of evidence of prior injuries, Illinois courts have required, at minimum, some evidence that the activity is generally associated with a risk of serious injuries." *Id.* ¶¶ 20-21.

The court then contrasted *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 246 (2007) (reversing summary judgment for defendants, where there was a genuine issue of material fact on the question of defendants' willful and wanton conduct when evidence demonstrated it was well known mini-trampolines are associated with risk of spinal cord injuries) and *Hadley v. Witt Unit School District 66*, 123 Ill. App. 3d 19, 23 (1984) (reversing summary judgment for defendants, where teacher's failure to act after observing students engaging in the "dangerous activity" of hammering a piece of scrap metal through a hole in an anvil could constitute willful and wanton conduct) and found that plaintiff did not present evidence that floor hockey played with plastic sticks and a squishy ball was an "obviously dangerous activity." *Id.* ¶¶ 21-23. The court then reiterated that without such evidence, plaintiff's claim that the teacher acted willfully and wantonly by not requiring the use of safety goggles amounted to "mere speculation, which is insufficient to establish a claim for willful and wanton conduct." *Id.* at ¶ 23.

¶ 23 Applying the logic of *Floyd* and *Barr* here, Foulks was required to allege facts in her amended complaint that defendants were aware of either prior similar injuries from students running in flip-flops or aware of facts which would have put a reasonable person on notice of the risk of serious harm from running in flip-flops. A review of the amended complaint plainly shows that there are no allegations of prior similar injuries. So, the amended complaint must have alleged that defendants were aware that running in flip-flops is an "obviously dangerous

activity" generally associated with a risk of serious injuries. Foulks's attempt at this, claiming that it is "common knowledge that running in flip-flops is not safe and is likely to cause the runner to fall" and that the district has an unwritten policy requiring students to wear proper footwear (*i.e.*, not flip-flops) during gym class, is lacking.

¶ 24    Instructive for us with respect to Foulks's argument is *Leja v. Community Unit School District 300*, 2012 IL App (2d) 120156. In *Leja*, the plaintiff alleged she was injured when the school-owned volleyball net crank she was operating snapped back, striking her face. *Id.* ¶ 5. The plaintiff further alleged that the defendant, through its agent-employees, acted "with an utter indifference and conscious disregard" for her safety, in part, when the teacher instructed her "to operate the unsafe, defective, and/or dangerous equipment knowing such equipment would likely cause injury to the [p]laintiff" and "failed to prevent [p]laintiff from operating the dangerous equipment, notwithstanding the fact that [d]efendant knew of [*sic*] should have known of the prior difficulties with the volleyball net equipment and its propensity to cause harm to an individual through the labels provided on the volleyball equipment itself *** and common sense." *Id.* The circuit court granted defendant's section 2-615 motion to dismiss, and plaintiff appealed. *Id.* ¶ 6. We held that "[k]nowledge of the crank's tendency to 'snap back,' without additional factual allegations showing that defendant was aware or should have been aware of a serious danger posed, does not cross the threshold required for willful and wanton conduct." *Id.* ¶ 13. In so holding, we rejected the plaintiff's contention that instructing a student to use a product bearing a warning label "can evince an utter indifference to or a conscious disregard for the student's safety, merely because the label warns of an underlying danger." *Id.* ¶15. Because the plaintiff did not allege specific facts and that defendant knew or should have known of the condition and of the danger and high risk of injury it posed, we affirmed. *Id.* ¶ 14.

¶ 25    We find the same holds true here. Foulks argues that "common knowledge" should be sufficient to state a claim for willful and wanton conduct. While there is some intuitive appeal to counsel's argument, intuition and inferences are insufficient to state a claim of willful and wanton conduct when a plaintiff must allege *facts* that show defendants were aware of the danger and high risk of injury it posed. As the circuit court identified, the Internet citations "don't provide sufficient bases" for the determination that running in flip-flops is generally associated with a risk of serious injury. Foulks seemingly recognized this and attempted to bolster her allegation by referencing other school districts or gym facilities written policies on the matter in her response to defendants' motion. However, common knowledge alone is not enough to state that these particular defendants were aware of the dangers, particularly in light of *Leja*, where the plaintiff's allegation of a similar "common sense" argument as well as an explicit warning label on the injury-causing device was insufficient to state a claim of willful and wanton conduct. Like defendant in *Leja*, defendants here arguably may have been negligent or careless, but the facts alleged do not show that they acted with an utter indifference to or conscious disregard for plaintiff's safety.

¶ 26    Similarly, Foulks's allegation of Judkins's violation the district's unwritten policy is insufficient on its face to establish that defendants acted willfully and wantonly. We note that Foulks "does not quarrel" with the rule that a violation of a policy is not *per se* willful and wanton conduct. Indeed, as a general rule, a public entity's violation of a self-imposed rule or guideline "does not normally impose a legal duty, let alone constitute evidence of negligence, or beyond that, willful and wanton conduct." (Internal quotation marks omitted.) *Wade v. City of Chicago*, 364 Ill. App. 3d 773, 781 (2006); see also *Floyd*, 355 Ill. App. 3d at 702 ("a public entity's violation of its own internal rules does not constitute proof of negligence, much less willful and wanton

conduct"); *Young v. Forgas*, 308 Ill. App. 3d 553, 566 (1999) ("Internal rules and procedures *** do not impose a legal duty upon municipal entities and their employees.").

¶ 27    Foulks also argues that requiring the pleading to allege knowledge of prior similar injuries or knowledge or serious injury was a higher standard than the definition of "willful and wanton conduct" in either the Tort Immunity Act or the IPI. However, our supreme court has characterized the definition of willful and wanton in the Tort Immunity Act as "entirely consistent with this court's long-standing case law." *Harris v. Thompson*, 2012 IL 112525, ¶ 41; see also *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 242 (2007) (rejecting defendants' arguments that the 1986 amendments to the Tort Immunity Act—when section 1-210 was enacted—imposed a heightened willful and wanton standard, which we note was decided after *Floyd*). Thus, this argument must too fail.

¶ 28    At oral argument, appellate counsel reiterated the argument that the amended complaint alleged sufficient facts to establish willful and wanton conduct, identifying the allegation of "common sense," the unwritten school policy banning flip-flops in gym class, and the two Internet citations "should be sufficient." Counsel then noted, "I'm not sure what else we could [have] pled." When asked about trial counsel's going "all in" with this argument, appellate counsel stated:

> "If [this] court believes that there are further allegations that are necessary and is going to create a template, if you will, for [alleging] willful and wanton [conduct] *** that would be different than the templates we've seen for alleging willful and wanton conduct so far, *** that would be some change in the law because you would really be giving the trial court a set of guidelines that didn't exist when we were there then we would ask that the court remand it and to see if we could do better."

We will not offer such a "template," lest we render an advisory opinion of what we think trial counsel *should* have done. *CGE Ford Heights, L.L.C. v. Miller*, 306 Ill. App. 3d 431, 441 (1999) ("We will not render advisory opinions or decide cases merely to establish precedent."). Nor can we remand the case for repleading. *Bajwa v. Metropolitan Life Ins. Co.*, 208 Ill. 2d 414, 435-36 (2004) ("In the interest of judicial economy and to prevent a plaintiff from circumventing the rule against interlocutory appeals, a party should not ordinarily be permitted to stand on his pleadings before the trial court and then seek leave to amend in the appellate court after the dismissal of the trial court is affirmed."). Where parties ask for the case to be dismissed with prejudice to challenge the grounds for the dismissal on appeal, an affirmance will generally preclude a remand to replead except where, unlike here, in affirming the circuit court modifies existing law.

¶ 29    In light of the circuit court's comments regarding its interest in "what the Second District does with [this case]" because of the amount of analogous cases "on both sides," we issue an additional caution. The court's responsibility is to carefully exercise its discretion in these situations (see *Muirfield Village-Vernon Hills, LLC v. K. Reinke, Jr. and Co.*, 349 Ill. App. 3d 178, 195 (2004) "the trial court should exercise its discretion liberally in favor of allowing amendments, and any doubts should be resolved in favor of allowing the amendment, if the ends of justice will be furthered by allowing the plaintiff to file an amended complaint.") and not fall prey to the same curiosity that lead counsel down this path.

¶ 30    In sum, the circuit court did not err in granting defendants' motion to dismiss Foulks's amended complaint, as it failed to allege sufficient facts to state a claim of willful and wanton conduct.

¶ 31                                    III. CONCLUSION

¶ 32    For the reasons stated, the judgment of the circuit court of De Kalb County is affirmed

¶ 33    Affirmed.