2026 IL App (3d) 250108

Opinion filed April 20, 2026

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| SAMANTHA ALLUMI, as Parent and Next Friend of Chase Allumi, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| OSWEGO COMMUNITY UNIT SCHOOL DISTRICT 308; OSWEGO COMMUNITY UNIT SCHOOL DISTRICT 308 BOARD OF EDUCATION; SOUTHBURY ELEMENTARY SCHOOL; SOUTHBURY HOME AND SCHOOL ORGANIZATION; and BOUNCE CITY PARTY RENTALS, INC., d/b/a Bouncy City Party Rentals, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal No. 3-25-0108 Circuit No. 24-LA-411 |
| Defendants | ) ) | |
| (Oswego Community Unit School District 308, Oswego Community Unit School District 308 Board of Education, and Southbury Home and School Organization, | ) ) ) ) ) | |
| Defendants-Appellees). | ) ) ) | The Honorable Roger Rickmon and Daniel D. Rippy, Judges, Presiding. |

JUSTICE PETERSON delivered the judgment of the court, with opinion.
Justices Brennan and Davenport concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff, Samantha Allumi, on behalf of her minor son, Chase Allumi, filed a civil tort action against multiple defendants, most of whom were connected to Oswego Community Unit School District 308, for injuries that her son suffered when he fell from an inflatable slide during a school event. The defendants that were affiliated with the school district—Oswego Community Unit School District 308, Oswego Community Unit School District 308 Board of Education, and Southbury Home and School Organization (Oswego defendants)—filed a motion pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2024)) to dismiss the negligence claims that were brought against them, alleging that they were immune from liability for those claims under either section 3-108(a) or section 3-109 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/3-108(a), 3-109 (West 2022)). Those sections bar claims that are based upon a public entity's alleged negligence in failing to properly supervise an activity on public property.[1] Following full briefing and a hearing on the matter, the trial court granted the Oswego defendants' motion and dismissed plaintiff's negligence claims against the Oswego defendants with prejudice. Plaintiff filed a motion to reconsider, which the trial court denied. Plaintiff appeals. We affirm the trial court's judgment in part, reverse the trial court's judgment in part, and remand this case with directions for further proceedings.

---

[1]The Oswego defendants also alleged that they were immune from liability under the School Code (105 ILCS 5/1-1 *et seq.* (West 2022)). However, since the trial court based its decision on the Tort Immunity Act, the parties have focused their arguments on appeal on the application of the Tort Immunity Act. In addition, neither side has argued that an analysis of the application of the School Code would lead to a different result in this case. Thus, we will limit our discussion to the application of the Tort Immunity Act.

## I. BACKGROUND

The facts as set forth in plaintiff's complaint, the motion filings, and the procedural record can be summarized as follows. In May 2023, plaintiff's minor son, Chase, was an elementary school student at Southbury Elementary School in Oswego, Illinois. The school was located in Oswego Community Unit School District 308 and was owned, occupied, managed, and/or controlled by the school district and the board of education. The school district and the board were Illinois municipal corporations, and the third Oswego defendant—Southbury Home and School Organization (SHSO)—was an Illinois not-for-profit corporation.

On May 24, 2023, the Oswego defendants held an event known as a field day on the Southbury Elementary School campus during school hours. The event was organized, planned, controlled, directed, and/or supervised by the Oswego defendants, their agents, and/or their employees. As part of the event, the Oswego defendants had arranged for a large inflatable slide to be set up on the school campus for the students to use and had entered into an agreement with codefendant, Bounce City Party Rentals, Inc., d/b/a Bouncy City Party Rentals (Bounce City), to provide the slide for the event. The Oswego defendants did not provide plaintiff with advance notice of the event or that an inflatable slide would be used at the event.

During the field day event, the Oswego defendants, their agents, and/or their employees coordinated and/or organized a race between students that took place on the inflatable slide. Chase participated in the race. While the race was occurring, some of the other students participating in the race collided with Chase as he was trying to exit the slide, which caused Chase to fall from the slide to the ground and to suffer a severe and permanent fracture injury to his right arm. Chase had suffered a prior fracture to that same arm in November 2022, of which the school personnel were aware.

¶ 6        In May 2024, plaintiff filed the instant tort action against the Oswego defendants and Bounce City on behalf of Chase.[2] In the complaint, plaintiff alleged many of the facts set forth above and asserted both negligence and willful and wanton conduct counts against each of the Oswego defendants. In total, the complaint contained nine counts.

¶ 7        Plaintiff's negligence claims against the Oswego defendants were contained in count I (the school district), count III (the board of education), and count VII (SHSO) of the complaint. In those counts, plaintiff alleged that the Oswego defendants had committed one or more of the following negligent acts or omissions:

"(a) Improperly operated, planned, controlled, supervised, and/or coordinated the aforementioned field day event such that as a direct and proximate result thereof, CHASE ALLUMI was injured;

(b) Negligently directed and/or organized/allowed to be organized a chaotic race between children upon the inflatable slide when the Defendant[s] knew or should have known that doing so posed a risk of injury to [CHASE ALLUMI];

(c) Failed to supervise and/or failed to adequately supervise the children utilizing the inflatable;

(d) Failed to place a mat, cushion, or other safety device at the designated exit of the inflatable such that children would have a safe place to land if falling from said inflatable, when Defendant[s] knew or should have known that the same was necessary to prevent risk of injury to those utilizing said inflatable;

---

[2] Plaintiff also initially named the school as a defendant. However, the counts against the school (counts V and VI) were later dismissed by the agreement of the parties.

4

(e) Failed to instruct, train, and/or supervise any volunteers serving as the agents of said Defendant[s] operating said inflatable, in the proper use of the aforementioned inflatable and the dangers associated with said device;

(f) Failed to hold back CHASE ALLUMI when defendant[s] knew or should have known that he was more susceptible to injury;

(g) Failed to notify parents of field day when said notification was necessary for the safety of CHASE ALLUMI, and other students;

(h) Carelessly and improperly failed to advise students' parents of the activities of field day, including but not limited to the use of an inflatable slide, when they knew or should have known that doing so was necessary for the safety of students with various health needs;

(i) Failed to ensure medical clearance of all students participating in the subject field day and utilizing the subject inflatable slide;

(j) Negligently sent children over the slide without ensuring adequate clearance at the bottom of said slide;

(k) Negligently provided an unsafe inflatable for use by its students;

(l) Negligently failed to follow safety directions accompanying said inflatable; [and]

(m) Was otherwise negligent and careless."

¶ 8    In August 2024, the Oswego defendants filed a motion to dismiss plaintiff's negligence claims against them (counts I, III, and VII of the complaint) pursuant to section 2-619 of the Code, asserting, among other things, that they were immune from liability for those claims under section

5

3-108(a) of the Tort Immunity Act, the section of the Act that bars claims that are based upon a public entity's alleged negligence in failing to properly supervise an activity on public property.

¶ 9    Plaintiff filed a response and opposed the Oswego defendants' claim of immunity. In the response, plaintiff asserted that the Oswego defendants' motion to dismiss was overly broad and premature and that it failed to address some of the negligent acts and omissions alleged, which did not fall under the category of supervision and were not subject to the provisions of section 3-108.[3] Further, because Chase was injured while participating in a hazardous recreational activity, section 3-109 of the Act (*id.* § 3-109) governed whether and to what extent immunity applied, rather than section 3-108. Plaintiff also asserted that SHSO was not entitled to immunity under the Act, even if immunity applied to other Oswego defendants, because SHSO was not a "local public entity" as required by the Act for immunity to apply. To support some of the factual allegations in her response, plaintiff attached her own affidavit to the response as an exhibit.

¶ 10    The Oswego defendants filed a reply and maintained their position that section 3-108(a) immunity (supervision immunity), the only section cited in their motion, applied to all of the acts of negligence alleged against them in the complaint. The Oswego defendants also argued that they were immune from liability for plaintiff's claims of negligent supervision, even if section 3-109 applied in this case, because section 3-109 essentially adopted the section 3-108(a) immunity provisions for such claims. The Oswego defendants argued further that SHSO was a local public entity to which the immunity provisions applied and attached to their reply in support of that argument an uncertified copy of SHSO's 2023 bylaws. The bylaws provided, among other things, that SHSO was "established for the purpose of uniting the staff and administration of Southbury

---

[3]Plaintiff identified in her response the specific allegations that she believed did not fall under the category of supervision. Those allegations were the ones contained in paragraphs (d), (f), (g), (h), (i), and (k).

Elementary School with parents, guardians and the community, while enhancing the quality of the education provided to the students"; that SHSO "exist[ed] to help kids have the greatest life possible"; that SHSO "serve[d] to better the lives of the Southbury Sharks' community through fun, educational and character enhancing activities"; and that the Southbury Elementary School principal and a teacher representative would serve as members of the SHSO board. The Oswego defendants also attached to their reply an uncertified copy of the school district's 2023 written policy regarding parent organizations and booster clubs. The policy indicated that to be recognized by the board of education and/or to use a name or logo associated with the district or one of the district's schools, the organization or booster club had to, among other things, agree to adhere to all of the board of education's policies and administrative procedures.

¶ 11       In October 2024, a hearing was held in the trial court on the Oswego defendants' motion to dismiss. After listening to the oral arguments of the attorneys, the trial court took the case under advisement. The following month, the trial court issued a written ruling granting the Oswego defendants' motion and dismissing plaintiff's negligence claims against the Oswego defendants (counts I, III, and VII of the complaint) with prejudice. As part of its ruling, the trial court found that SHSO was a local public entity as specified in the Tort Immunity Act.

¶ 12       Plaintiff filed a motion to reconsider. The trial court denied the motion and included an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding in its order. Plaintiff appealed.

¶ 13                                    II. ANALYSIS

¶ 14                         A. Grant of the Oswego Defendants' Motion
                         to Dismiss Based Upon Supervision Immunity

¶ 15       As her first point of contention, plaintiff argues that the trial court erred in finding that the Oswego defendants were immune from liability under section 3-108(a) of the Tort Immunity Act for plaintiff's negligence claims against the Oswego defendants and in granting the Oswego

7

defendants' section 2-619 motion to dismiss those claims on that basis. Plaintiff asserts that the trial court's ruling was erroneous for two reasons. First, plaintiff contends, the trial court applied the wrong immunity statute in making its ruling. According to plaintiff, because Chase was injured while participating in a hazardous recreational activity—racing on an inflatable slide—the trial court should have made its immunity determination based upon section 3-109 of the Act, the section that specifically applies to hazardous recreational activities, instead of section 3-108(a) of the Act, the section that generally applies to claims of inadequate supervision. In making that contention, plaintiff points out that even the Oswego defendants acknowledge that section 3-109 may apply in this case. Second, plaintiff contends, the trial court incorrectly determined that all of the negligent acts alleged in the complaint fell under the category of failure to properly supervise, rather than under the category of failure to guard or warn. Plaintiff maintains that the trial court should have recognized that at least some of the negligent acts alleged in the complaint fell under the category of failure to guard or warn, should have found that those particular acts were exempt from immunity under section 3-109(c)(1), and therefore, should have denied the motion to dismiss as to those acts. Plaintiff asks that we reverse the trial court's grant of the Oswego defendants' motion to dismiss plaintiff's negligence claims against the Oswego defendants and that we remand this case for further proceedings on those claims (and on the other claims that are still pending in the trial court).

¶ 16        The Oswego defendants argue that the trial court's ruling was proper and should be upheld. The Oswego defendants assert that the trial court correctly determined that all of the negligent acts alleged in the complaint fell under the category of failure to properly supervise, and not under the category of failure to guard or warn, and correctly found that the Oswego defendants were immune from liability for those claims under either section 3-108(a) or 3-109 of the Act, regardless of

which of those two sections is ultimately found to apply. In making that assertion, the Oswego defendants note that Illinois courts have consistently rejected efforts to characterize a complaint as alleging something other than what it actually alleges in an attempt to avoid a clearly applicable immunity. Thus, the Oswego defendants ask that we affirm the trial court's ruling granting the Oswego defendants' section 2-619 motion to dismiss plaintiff's negligence claims against the Oswego defendants and that we impose sanctions on plaintiff for filing a frivolous appeal.

¶ 17        Section 2-619 of the Code allows a litigant to obtain an involuntary dismissal of an action or claim based upon certain defects or defenses. See 735 ILCS 5/2-619 (West 2024); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). The statute's purpose is to provide litigants with a method for disposing of issues of law and easily proven issues of fact early in a case, often before discovery has been conducted. See *Van Meter*, 207 Ill. 2d at 367; *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759 (2004). In a section 2-619 proceeding, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the nonmoving party's claim. *Van Meter*, 207 Ill. 2d at 367. Section 2-619 lists several different grounds for which an involuntary dismissal may be granted. See 735 ILCS 5/2-619(a)(1)-(9) (West 2024). Under subsection (a)(9), a litigant may obtain an involuntary dismissal of a claim asserted against him if the claim is barred by other affirmative matter, which avoids the legal effect of or defeats the claim. *Id.* § 2-619(a)(9). An "affirmative matter" is something in the nature of a defense that negates the cause of action completely. *Van Meter*, 207 Ill. 2d at 367. Statutory immunity is an affirmative matter that may properly be raised in a section 2-619(a)(9) motion to dismiss. See *id.* In ruling upon a section 2-619 motion to dismiss, the court must construe all of the pleadings and supporting documents in the light most favorable to the nonmoving party. *Id.* at 367-68. A section 2-619 motion to dismiss should not be granted unless

9

the plaintiff can prove no set of facts that would support a cause of action. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8. On appeal, a dismissal pursuant to section 2-619 is reviewed *de novo. Van Meter*, 207 Ill. 2d at 368. When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of a section 2-619 motion to dismiss may be affirmed on any basis supported by the record. *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 14.

¶ 18        In resolving this particular issue, we are called upon to interpret various statutory immunity provisions. The principles of statutory construction are well established. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56. The most reliable indicator of that intent is the plain and ordinary meaning of the language of the statute itself. *Id.* In determining the plain meaning of statutory terms, a court should consider the statute in its entirety and keep in mind the subject the statute addresses and the apparent intent of the legislature in enacting the statute. See *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009); 5 ILCS 70/1.01 (West 2022) (indicating that in construing a statute, "[a]ll general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out"). If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *Gaffney*, 2012 IL 110012, ¶ 56. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Id.* However, if the language of a statute is ambiguous in that it is susceptible to more than one reasonable interpretation, a court may consider extrinsic aids to determine the meaning of the statutory language. See *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 51 (1990). As with a

trial court's grant of a section 2-619 motion to dismiss, the standard of review on appeal for an issue of statutory construction is *de novo*. *Gaffney*, 2012 IL 110012, ¶ 50.

¶ 19 The trial court in the instant case apparently granted the motion to dismiss based upon the application of the Tort Immunity Act. The trial court's written ruling does not specify the basis upon which the motion to dismiss was granted and no report of proceedings has been made part of the record in this appeal. The Tort Immunity Act governs the tort liability of local public entities and public employees. See *West v. Kirkham*, 147 Ill. 2d 1, 5 (1992). The Act adopts the general principle that local governmental units are liable in tort but limits that liability with an extensive list of immunities based on specific government functions. See *Harris v. Thompson*, 2012 IL 112525, ¶ 16. The Act's purpose is to protect local public entities and public employees from liability arising from the operation of government. 745 ILCS 10/1-101.1(a) (West 2022); *Harris*, 2012 IL 112525, ¶ 17. By providing immunity, the legislature sought to prevent the diversion of public funds from their intended purpose to the payment of damage claims. *Harris*, 2012 IL 112525, ¶ 17. The Act grants only immunities and defenses—it does not create any new duties but, rather, merely codifies those duties that existed at common law, to which the subsequently delineated immunities apply. *Id.*; see 745 ILCS 10/1-101.1 (West 2022). Unless an immunity provision applies, governmental units are liable in tort to the same extent as private parties. *Harris*, 2012 IL 112525, ¶ 16.

¶ 20 According to plaintiff, the resolution of this issue turns on whether section 3-108(a) or 3-109 of the Act governs in determining whether the Oswego defendants are entitled to immunity. Both sections 3-108(a) and 3-109 provide immunity to local public entities and public employees for negligence claims, at least to some extent. See 745 ILCS 10/3-108(a), 3-109(a), (c)(2) (West 2022). Section 3-108(a) of the Act provides supervision immunity—it grants immunity to local

11

public entities and public employees for injuries that occur as a result of the entities' or employees' negligence in failing to properly supervise an activity on, or the use of, public property. See *id.* § 3-108(a). Section 3-109 of the Act, on the other hand, provides hazardous recreational activity immunity—it grants immunity to local public entities and public employees for negligence injuries that occur when a person (the plaintiff) is participating in a hazardous recreational activity on public property. See *id.* § 3-109(a), (c)(2).

¶ 21    Neither section 3-108(a) nor 3-109 of the Act, however, provides immunity to a local public entity or public employee if the entity or employee was guilty of willful and wanton conduct that proximately caused the injured person's injury. See *id.* §§ 3-108(a), 3-109(a), (c)(2); *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 234 (2007) (interpreting section 3-109(c)(2) of the Act as providing an exception to section 3-109 immunity for willful and wanton conduct). In addition, section 3-109 contains a second exception, which allows negligence claims against a local public entity or public employee, to the extent that those claims would otherwise exist, for the negligent failure of the local public entity or public employee to "guard or warn of a dangerous condition of which [the local public entity or public employee] has actual or constructive notice and of which the participant does not have nor can be reasonably expected to have had notice." 745 ILCS 10/3-109(c)(1) (West 2022). Section 3-109 provides further, however, that nothing in the exceptions subsection of that statute creates a duty of care or basis of liability for personal injury or damage to personal property. *Id.* § 3-109(c).

¶ 22    The Oswego defendants do not agree with plaintiff that the resolution of this issue turns on whether section 3-108(a) or section 3-109 of the Act applies to the immunity determination. Instead, the Oswego defendants argue that the resolution of this issue turns on whether the negligent acts alleged in plaintiff's complaint constitute acts of supervision such that supervision

immunity would apply, regardless of whether section 3-108(a) or section 3-109 is ultimately found to be the governing statute. Neither the term "supervise" nor the term "supervision" are defined in the Act. Black's Law Dictionary defines "supervision" as "[t]he series of acts involved in managing, directing, or overseeing persons or projects." Black's Law Dictionary (12th ed. 2024). In addition, according to the case law on this issue, the term "supervision" includes coordination, direction, oversight, teaching, demonstration of techniques, implementation, management, superintendence, regulation, and, to some degree, active participation in the activity while supervising it, not just passive oversight of the activity. See *Spangenberg v. Verner*, 321 Ill. App. 3d 429, 432 (2001); *Longfellow v. Corey*, 286 Ill. App. 3d 366, 370 (1997).

¶ 23        In the present case, after reviewing plaintiff's complaint, the documents filed in support of and in opposition to the Oswego defendants' motion to dismiss, and the legal principles set forth above, we conclude that most, but not all, of the acts of negligence alleged in the complaint fall under the category of failure to properly supervise. In the majority of the allegations, plaintiff sought to hold the Oswego defendants liable for failing to properly oversee and direct the field day activities. That conduct fits squarely within the definition of supervision. See Black's Law Dictionary (12th ed. 2024); *Spangenberg*, 321 Ill. App. 3d at 432; *Longfellow*, 286 Ill. App. 3d at 370. Therefore, as the Oswego defendants have argued in this appeal, they were immune from liability for those alleged acts of negligence, regardless of whether section 3-108(a) or section 3-109 is ultimately applied in this case. See 745 ILCS 10/3-108(a), 3-109 (West 2022); *Murray*, 224 Ill. 2d at 232-34 (recognizing, although somewhat implicitly, that local public entities and public employees are immune from liability under section 3-109 of the Act for failing to properly supervise hazardous recreational activities on public property unless the local public entities or public employees are guilty of willful and wanton conduct).

13

¶ 24    However, some of the negligent acts alleged in the complaint, we find, do not fall under the category of failure to properly supervise and are more appropriately categorized as a failure to guard or warn. Although the Act does not define the terms "guard" or "warn" or provide any guidance on how those terms should be used, the fact that the legislature chose to use those terms in section 3-109(c)(1), rather than the terms "supervise" or "supervision," must mean that the legislature intended for those terms to mean something other than "supervise" or "supervision." See *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 28 (recognizing that where the legislature uses certain language in some instances and wholly different language in another, a court must assume that the legislature intended different meanings or different results). The supreme court in *Murray* ruled that the negligent failure to "guard or warn" is an exception to the immunity granted in section 3-109(a); however, the court declined to address the specific meaning of "guard or warn" set forth in section 3-109(c)(1) in its decision. *Murray*, 224 Ill. 2d at 244. Further, our research has not identified any decisions of our appellate court addressing this issue.

¶ 25    The dictionary defines "guard" as "the act or duty of protecting or defending" (Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/guard (last visited Apr. 14, 2026) [https://perma.cc/2J5H-MMG4]) and "warn" as "to give notice to beforehand especially of danger or evil" (Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/warn (last visited Apr. 14, 2026) [https://perma.cc/K9RH-GSUL]). Thus, it would seem that to keep the category of "guard or warn" from being subsumed under the category of "supervision," courts would have to limit "guard or warn" to acts (or omissions) that took place ahead of time and in preparation for the activity in question and not while the local public entity or public employee was actually overseeing the activity. This is the approach that we

have taken, which we believe is the only interpretation that can logically harmonize the two concepts of "guarding or warning" and "supervision" as used in the statute, and gives effect to both terms/phrases and treats them as separate and distinct, as the legislature apparently intended.

¶ 26    Applying the principles set forth above and construing the complaint in the light most favorable to plaintiff, we disagree with the court's apparent finding that every allegation in plaintiff's complaint was an act of supervision, and find that the following alleged acts of negligence fall under the category of "guard or warn" as argued by plaintiff: the allegations pertaining to the failure to provide proper safety equipment (paragraph (d) set forth above); the failure to hold Chase back from participating (paragraph (f)), assuming that plaintiff was referring to the conduct of the Oswego defendants that occurred in advance of the field day and before the event was ongoing; the failure to notify parents of the field day event (paragraph (g)); the failure to advise parents that the field day activities would include the use of an inflatable slide (paragraph (h)); the failure to ensure the medical clearance of the students participating in the field day event (paragraph (i)); and the failure to provide a safe inflatable slide for the students to use during the event (paragraph (k)).

¶ 27    Although the Oswego defendants cite the Illinois Supreme Court's decisions in *Murray* and *Henrich v. Libertyville High School*, 186 Ill. 2d 381 (1998), in support of their assertion that even the allegations referred to above (failure to provide proper safety equipment, failure to hold Chase back from participating, failure to notify parents of field day, and failure to advise parents of the field day activities) fall within the category of failure to properly supervise, we are not persuaded that those decisions support the Oswego defendants' assertion in that regard. In *Murray*, a case where an eighth-grade student was injured while using a mini trampoline during an extracurricular tumbling class at school, the supreme court specifically ruled that the immunity

15

granted in section 3-109(a) is subject to *two* exceptions, both the failure to " 'guard or warn' " exception *and* the willful and wanton exception. *Murray*, 224 Ill. 2d at 234 (quoting 745 ILCS 10/3-109(c) (1992)). However, the court declined to address whether the plaintiff's allegation of failure to warn of spinal cord injury brought the case within the failure to guard or warn exception contained in section 3-109(c)(1) of the Act because "this issue was not fully briefed and argued by the parties." See *id.* at 244. The supreme court also did not specify whether supervision immunity under section 3-108(a) of the Act or discretionary immunity under section 2-201 of the Act (745 ILCS 10/2-201, 3-108(a) (West 1992)) was the provision that would ordinarily apply to plaintiff's allegation that the defendants had failed to provide the proper safety equipment but, rather, merely noted that the allegation would ordinarily fall within one of the two immunity provisions. See *Murray*, 224 Ill. 2d at 226, 234. As for *Heinrich*, a case where a high school student with known medical restrictions was injured during a water basketball game in physical education class, there is no indication in that case that either party challenged whether plaintiff's allegation—that the defendants failed to hold plaintiff back from participating in the activity despite knowing of plaintiff's permanent medical restrictions—fell within the category of failure to properly supervise. See *Henrich*, 186 Ill. 2d 381.

¶ 28        We conclude, therefore, that the trial court erred in granting the Oswego defendants' motion to dismiss as to the negligent acts alleged in paragraphs (d), (f), (g), (h), (i), and (k) of plaintiff's complaint at this stage of the proceedings. Yet to be decided by the trial court is the initial determination of whether racing on an inflatable slide constitutes a "hazardous recreational activity" under section 3-109. The court's written order fails to address this issue or specify which section of the immunity statute it applied in dismissing the complaint. Further, we find nothing in the record establishing oral findings, explanation, or analysis in regard to which section it applied.

16

Section 3-109(b) defines " 'hazardous recreational activity' " as "a recreational activity conducted on property of a local public entity which creates a substantial (as distinguished from minor, trivial, or insignificant) risk of injury to a participant or a spectator." 745 ILCS 10/3-109(b) (West 2022). It then sets forth a nonexhaustive list of examples of hazardous recreational activities. *Id.* § 3-109(b)(1)-(3). We take no position on whether racing on an inflatable slide would constitute a hazardous recreational activity under section 3-109, such that section 3-109 would apply in this case. We direct the trial court to make that determination on remand because the guard or warn exception to immunity upon which plaintiff relies (section 3-109(c)(1) of the Act) does not apply unless plaintiff was injured while participating in a hazardous recreational activity. Making that determination may require that additional discovery be conducted. Accordingly, we reverse the trial court's ruling as to those paragraphs with regard to counts I, III, and VII of the complaint and remand this case for further proceedings on those counts and on the other counts that are still pending before the trial court, as well as the determination as to whether racing on the inflatable slide was a hazardous recreational activity.

¶ 29        Although we are mindful of the admonition contained in the case law and as noted by the Oswego defendants—that a plaintiff should not be allowed to assert that his or her complaint is about something other than what it is actually about in order to avoid a clearly applicable statutory immunity (see, *e.g.*, *Ries v. City of Chicago*, 242 Ill. 2d 205, 219 (2011))—we do not believe that plaintiff is doing so in the present case. Rather, as our above analysis indicates, some of the negligent acts alleged by plaintiff in her complaint fall under the category of failure to properly supervise and some do not. Ultimately, in later stages of the proceedings in this case, plaintiff will have to provide factual support/proof for those claims.

17

¶ 30                           B. Whether SHSO Is a Local Public Entity Under the Act

¶ 31          As her second contention, plaintiff argues that the trial court erred in granting the section 2-619 motion to dismiss as to SHSO, even if the motion was properly granted as to the other Oswego defendants, because the Oswego defendants failed to establish that SHSO was a local public entity under the Act. Plaintiff asks that we reverse the trial court's grant of the motion to dismiss and that we remand this case for further proceedings.

¶ 32          The Oswego defendants argue that the trial court's ruling was proper and should be upheld. According to the Oswego defendants, SHSO fits squarely into the definition of a "local public entity" as provided in the Act and as analyzed under the case law. The Oswego defendants ask that we affirm the trial court's grant of their motion to dismiss and that we impose sanctions upon plaintiff for filing a frivolous appeal.

¶ 33          The general legal principles that apply in reviewing a trial court's grant of a defendant's section 2-619 motion to dismiss have been set forth above and will not be repeated here, other than to again state that the proper standard of review on appeal for the grant of such a motion is *de novo*. *Van Meter*, 207 Ill. 2d at 368. We also will not repeat the rules of statutory construction, which apply to this issue as well.

¶ 34          As noted above, the purpose of the Tort Immunity Act is to protect local public entities and public employees from liability arising from the operation of government. 745 ILCS 10/1-101.1(a) (West 2022); *Harris*, 2012 IL 112525, ¶ 17. Under the Act, a " '[l]ocal public entity' " includes, among other things, "any not-for-profit corporation organized for the purpose of conducting public business." 745 ILCS 10/1-206 (West 2022). The term or phrase "public business" is not defined in the Act. The Illinois Supreme Court has indicated, however, that to satisfy the public business requirement under the Act, a not-for-profit corporation must show that (1) it pursues an activity

18

that benefits the entire community without limitation and (2) it is tightly enmeshed with government either through direct governmental ownership or operational control by a unit of local government. See *O'Toole v. Chicago Zoological Society*, 2015 IL 118254, ¶¶ 18-23.

¶ 35 In the present case, after reviewing the pleadings and supporting documents presented in the section 2-619 proceeding and the legal principles set forth above, we conclude that the trial court correctly determined that SHSO was a local public entity as specified in the Act. We reach that conclusion for three reasons. First, the supporting documents that were presented in the section 2-619 proceeding showed that SHSO provided a government-like service. The SHSO bylaws that were submitted in the trial court indicated that SHSO was formed to, among other things, enhance the education of public school students and to improve the lives of the students and the school community as a whole. Such services are the type of services that have traditionally been provided by the government. See *O'Melia v. Lake Forest Symphony Ass'n*, 303 Ill. App. 3d 825, 829 (1999) (recognizing that the government was organized to provide for the public health, safety, welfare, and education). Second, the supporting documents also showed that SHSO was subject to governmental regulation and control. The school district policy that was submitted established that SHSO could only exist with the consent of the board of education and was required to adhere to all board policies and procedures. In addition, SHSO was required to have the principal of Southbury Elementary School and a teacher from the school as members of the SHSO board. Third and finally, although SHSO did not receive any governmental funding, our supreme court has indicated that such funding is not determinative of whether a not-for-profit corporation qualifies as a public entity for purposes of the Act. See *Carroll v. Paddock*, 199 Ill. 2d 16, 25 (2002). Based upon all of the information contained in the pleadings and supporting documents, the trial court properly determined that SHSO was organized for the purpose of conducting public business and

19

that it qualified as a local public entity under the Act. See 745 ILCS 10/1-206 (West 2022); *O'Toole*, 2015 IL 118254, ¶¶ 18-23.

¶ 36     In addressing this issue in her brief on appeal, plaintiff mentions that (1) the trial court disregarded plaintiff's assertion that it was premature to decide this issue before the parties had conducted discovery and (2) the Oswego defendants improperly attached the SHSO formation documents and the school district policy statement to their reply brief in the trial court. Plaintiff does not, however, expound upon those matters, present any legal argument with regard to those matters, or provide any legal authority to support claims of error on those bases. We, therefore, do not address those matters further in our decision on this issue. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (indicating that points not argued by the appellant in her opening brief are forfeited).

¶ 37                              C. Other Pending Matters

¶ 38     As a final issue on appeal, we must address the remaining pending matters in this case. The Oswego defendants filed a motion to dismiss a portion of the appeal due to lack of appellate jurisdiction, claiming that the trial court erred when it ruled that plaintiff could proceed with an appeal of the first two issues in plaintiff's appellate brief under Rule 304(a). Plaintiff filed a response, opposed the motion to dismiss, and requested that sanctions be imposed upon the Oswego defendants by this court for filing a frivolous motion. We declined to rule upon the motion to dismiss at the outset of the appeal and took the motion to be decided with the other issues raised in the appeal. In addition to filing the motion to dismiss, the Oswego defendants, in their brief on appeal, requested that we impose sanctions against plaintiff for filing a frivolous appeal. We now address those remaining matters.

¶ 39     First, as to the motion to dismiss, we do not agree with the Oswego defendants' position. In our view, the trial court was well within its discretion to allow an appeal to proceed as to the

first issue in this case. At least one Illinois Appellate Court decision has allowed a Rule 304(a) appeal to proceed in similar circumstances. See *Krivitskie v. Cramlett*, 301 Ill. App. 3d 705, 706-08 (1998) (finding that the plaintiff's willful and wanton conduct claim, which was based upon the same incident as her negligence claim, was sufficiently distinct from her negligence claim to allow her to file a separate appeal under Rule 304(a) to challenge the dismissal of her willful and wanton conduct claim, even though her negligence claim remained pending in the trial court). In addition, as the Oswego defendants acknowledge, an appeal as to the second issue in this case was properly allowed under Rule 304(a). Thus, granting the Oswego defendants' motion to dismiss the appeal as to the first issue would not prevent piecemeal appeals from occurring in this case as the appeal on the second issue would still be pending before this court. For those reasons, we deny the Oswego defendants' motion to dismiss the first issue in this appeal for lack of jurisdiction.

¶ 40        Second, we also deny plaintiff's request for sanctions against the Oswego defendants for filing a frivolous motion. Although we denied the Oswego defendants' motion to dismiss, we do not find that motion to be frivolous. Contrary to plaintiff's implied assertion, we do not believe that the trial court was required by the decision in *Krivitskie* to allow an appeal of the first issue to proceed under Rule 304(a) in this case. Rather, the *Krivitskie* decision merely established that such an appeal may be allowed. The trial court was still required to exercise its discretion to determine if that appeal was appropriate in this particular case. See *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 544 (2011) (noting that the Rule 304(a) procedure allows the trial court to limit piecemeal appeals when the trial court deems it appropriate to do so but also allows the trial court to allow an early appeal, when, in the trial court's discretion, doing so would have the effect of expediting the resolution of the controversy, would be fair to the parties, and would conserve judicial resources).

21

¶ 41 Third and finally, with regard to the Oswego defendants' request for sanctions, we deny that request as well. As our ruling on the first issue in this appeal indicates, we have found that plaintiff's appeal is not frivolous and have determined that a portion of the trial court's ruling was erroneous.

¶ 42 III. CONCLUSION

¶ 43 For the foregoing reasons, we affirm the judgment of the circuit court of Will County in part, reverse the judgment in part, and remand this case with directions for further proceedings consistent with our ruling in this appeal.

¶ 44 Affirmed in part and reversed in part; cause remanded.

*Allumi v. Oswego Community Unit School District 308*, 2026 IL App (3d) 250108

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 24-LA-411; the Hon. Roger Rickmon and the Hon. Daniel D. Rippy, Judges, presiding. |
| **Attorneys for Appellant:** | Cameron J. Tober, of Taxman, Pollock, Murray & Bekkerman, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Lance E. Neyland, of IFMK Law, Ltd., of Northbrook, for appellees. |